**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 0:24-cv-60703-LEIBOWITZ/AUGUSTIN-BIRCH**

**ELISA CONSENTINO**,

    *Plaintiff,*

*v.*

**BRIDGESTONE RETAIL
OPERATIONS, LLC**,

    *Defendant.*

_____/

**ORDER**

Defendant Bridgestone Retail Operations, LLC ("Defendant"), moves to dismiss Plaintiff's Amended Class Action Complaint [ECF No. 25] ("the Motion"). The Court has carefully considered the briefing, the record, and the applicable law. For the reasons set forth below, the Motion [ECF No. 25] is **DENIED.**

**I. BACKGROUND**

Defendant operates Firestone Complete Auto Care ("Firestone") in Plantation, Florida. On March 28, 2022, Plaintiff Elisa Consentino ("Plaintiff" or "Consentino") went to Firestone to purchase new tires for her vehicle. [*See* ECF No. 15 ¶ 11]. The written estimate and the final invoice for the purchase and installation of new tires included line-item charges for "Road Hazard Protection" ("RHP") and "TPMS [Tire Pressure Monitoring System] valve service kit labor." *Id.* ¶ 17. Though Defendant's website indicates that RHP is an optional service, Plaintiff alleges that Defendant did not orally inform her, or indicate on her written estimate or final invoice, that RHP was optional. *Id.* ¶¶ 18, 19. Plaintiff further contends that TPMS valve service kit labor is an optional service because "a

new tire, purchased from a reputable manufacturer," should not require additional "TPMS valve service kit labor" to operate on any vehicle. *Id.* ¶ 20.

Plaintiff filed a class action against Defendant for violations of the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) and the Florida Motor Vehicle Repair Act (FMVRA). *See generally id.* Plaintiff's proposed class includes:

> [A]ll persons in the State of Florida who, within four (4) years before the filing of [the Amended Complaint], purchased one or more tires from Defendant who were charged for [RHP] or "TPMS Valve Service Kit Labor" (or a similar charge for replacement of "TPMS" parts).

*Id.* ¶ 28.

## II.  LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).  Although this pleading standard "does not require 'detailed factual allegations,' … it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (alteration added) (quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

On a motion to dismiss, the district court construes the complaint in the light most favorable to the plaintiff and accepts its factual allegations as true. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir.

1988)). Unsupported allegations and conclusions of law, however, will not benefit from this favorable reading. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The scope of review on a motion to dismiss under Rule 12(b)(6) is limited to the four corners of the complaint and the exhibits attached. *See Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006) (citation omitted). However, the doctrine of incorporation by reference permits a court to "consider evidence attached to a motion to dismiss without converting the motion into one for summary judgment if" the evidence is (1) referenced in the complaint, (2) central to the plaintiff's claim, and (3) undisputed. *Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023) (quoting *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).

Complaints that allege fraud or mistake are subject to the requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which requires parties to "state with particularity the circumstances constituting fraud or mistake." Claims that are "sounding in fraud" are subject to the heightened requirements of Rule 9(b). *See Steel Media Group, LLC v. Lewis*, No. 1:22-CV-21780, 2023 WL 1413043, at *3 (S.D. Fla. Jan. 6, 2023). A complaint satisfies Rule 9(b) by providing "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Opper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009).

### III.  DISCUSSION

Before the Motion can be decided, the Court needs to make clear what it is considering. In addition to the Amended Complaint itself, Defendant urges the Court to consider the exhibits attached to the Motion under the doctrine of incorporation, which include the initial work order from the tire sale, a revised work order, and the final invoice (together, "the transaction paperwork"). [*See*

3

ECF No. 25 at 8–11]. As a threshold matter, the Court agrees with Defendant and considers the transaction paperwork attached to the Motion as part of its determination. Moreover, Plaintiff concedes that the Court can consider "the subject invoice/work order." [*See* ECF No. 29 at 3]. Accordingly, the transaction paperwork is properly considered by the Court as part of the Amended Complaint for purposes of the Motion.

With this preliminary issue disposed of, the Court turns its attention to the Defendant's attack on both counts of Plaintiff's Amended Complaint.

**Count I: The Florida Deceptive and Unfair Practices Act (FDUTPA)**

Defendant argues that Plaintiff's FDUTPA claim should be dismissed because: (1) Plaintiff fails to allege a deceptive trade practice; (2) Plaintiff failed to properly allege damages under the FDUTPA; and (3) conducting TPMS valve service kit labor on Plaintiff's vehicle was required by statute. [*See generally* ECF No. 25]. All these arguments fail; Plaintiff has sufficiently stated a cause of action under the FDUTPA.

The FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive practices in the conduct of any trade or commerce." § 501.204(1), Fla. Stat. The FDUTPA is intended to protect consumers from "commercial wrongdoing" and is patterned after the Federal Trade Commission Act. *See Millennium Commc'ns & Fulfillment, Inc. v. Off. of Attorney Gen.*, 761 So. 2d 1256, 1260 (Fla. 3d DCA 2000). To state a claim under the FDUTPA, Plaintiff must allege: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 985–86 (11th Cir. 2016). An act or practice is deceptive if it was likely to deceive a consumer acting reasonably in the same circumstances. *See id.* at 983–84. This test is evaluated objectively and "does not require a plaintiff to show actual reliance on the deceptive or unfair representation or omission." *Maor v. Dollar Thrifty Auto. Grp., Inc.*, No. 15-CV-22959, 2018 WL

4

4698512, at *6 (S.D. Fla. Sept. 30, 2018).  An unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021) (citations omitted).  Under FDUTPA, Plaintiff can recover actual damages, attorney's fees, and costs.  § 501.211(2), Fla. Stat. (2001).  Actual damages are generally measured by either (1) "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered," or (2) the purchase price paid for a product "rendered valueless as a result of the defect."  *Democratic Republic of the Congo v. Air Cap. Grp., L.L.C.*, 614 F. App'x 460, 472 (11th Cir. 2015) (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. 3d DCA 1984)).  The FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment.  *See City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008).

Defendant argues that Plaintiff failed to allege a deceptive practice because (1) she reviewed, altered, and signed the invoices; and (2) Defendant discloses that RHP is optional on its website. "[W]hether specific conduct constitutes an unfair or deceptive trade practice is a question of fact for the jury to determine."  *Calderon v. Sixt Rent a Car, L.L.C.*, No. 19-CV-62408, 2020 WL 700381, at *7 (S.D. Fla. Feb. 12, 2020) (internal quotations omitted).  Moreover, allegations of businesses automatically adding undisclosed optional fees, or "negative options" without alerting consumers, have been found sufficient to constitute a deceptive or unfair practice under the FDUTPA, even where the plaintiff signed a contract.  *See Gold Coast Racing, Inc. v. The Home Depot U.S.A., Inc.*, No. 05–CV-61931, 2006 WL 4579688, at *2 (S.D. Fla. Feb. 6, 2006) (concluding an alleged practice of automatically including an optional damage waiver into a purchase contract without alerting the consumer was misleading because it "amount[ed] to a 'negative option,' a universally condemned sales

5

practice in which customers are sold something unless they ask not to purchase it[.]"); *see also Am. Airlines, Inc. v. Despegar.com USA, Inc.,* No. 13-CV-22773-ALTONAGA, 2013 WL 12064859, at *7 (S.D. Fla. Nov. 13, 2013). Furthermore, whether website information precludes a finding that a consumer acting reasonably in the circumstances would have been misled by a defendant's conduct is a question of fact and not appropriate to address on a motion to dismiss. *See Harris v. Nordyne, LLC.*, 14-CV-21884-BLOOM/Valle, 2014 WL 12516076, at *6 (S.D. Fla. Nov. 13, 2013).

Defendant also argues that Plaintiff cannot allege actual damages because the products or services she purchased were delivered in the condition Plaintiff approved them to be delivered in. [*See* ECF No. 25 at 14]. However, on a motion to dismiss, a plaintiff need only allege that she suffered a loss that was proximately caused by the defendant's deceptive, misleading, or unfair trade practices under the FDUTPA. *See Collins v. DaimlerChrysler Corp.*, 894 So. 2d 988, 990 (Fla. 5th DCA 2004). Plaintiff alleges that if Defendant had disclosed that RHP and TPMS valve service kit labor were optional purchases, she would not have purchased them. [*See* ECF No. 15 ¶ 26]. Viewed in the light most favorable to Plaintiff, the Amended Complaint could be interpreted to mean that the TPMS valve service kit labor was unnecessary and valueless. Therefore, Plaintiff's actual damages would be the cost of RHP and the TPMS valve service kit labor. Further, Plaintiff's Prayer for Relief clarifies that she seeks damages pursuant to the FDUTPA, which only allows for recovery of actual damages. [*See id.* at 10]. Our Court has permitted plaintiffs to seek actual damages under the FDUTPA for a defendant's "negative option" practice. *See Gold Coast*, 2006 WL 4579688, at *2; *see generally Am. Airlines, Inc.,* 2013 WL 12064859, at *7. Accordingly, Plaintiff's allegation that she would not have purchased RHP and TPMS valve service kit labor supports a *prima facie* case of actual damages under the FDUTPA.

Finally, Defendant argues that it was required to conduct TPMS service kit labor on Plaintiff's vehicle by both the TREAD Act and 49 U.S.C. § 30122(b).  Here though, Defendant's arguments include facts and inferences that stray from the four corners of the Amended Complaint.  Even so, this argument is unsupported by the plain language of both the TREAD Act and 49 U.S.C. § 30122(b).  The TREAD Act, which requires manufacturers to equip vehicles made after 2007 with a TPMS, does not address the installation of tires by a motor vehicle repair business.  Defendant's cited regulation promulgated pursuant to the TREAD Act, 49 C.F.R. § 571.138, requires each vehicle to be equipped with a TPMS; it does not require a vehicle's TPMS valve kit to be serviced by a motor vehicle repair business each time a car receives new tires.  Furthermore, while 49 U.S.C. § 30122(b) prevents motor vehicle repair businesses from knowingly rendering car parts or equipment inoperative, this argument misses the mark here.  Defendant does not assert that a failure to provide a TPMS valve service kit when installing a new tire would make the existing TPMS system inoperative.  While additional discovery may lead to a determination that failure to provide TPMS valve service kit labor would render the existing TPMS system inoperable, at this stage Defendant has not demonstrated that TPMS service kit labor was required by statute.

For all these reasons, Defendant's Motion to Dismiss as to Count I is DENIED.

### Count II: The Florida Motor Vehicle Repair Act (FMVRA)

Plaintiff has sufficiently stated a cause of action under the FMVRA.  Defendant argues that Plaintiff's FMVRA claim should be dismissed because: (1) the FMVRA does not apply to RHP or to TPMS valve service kit labor; (2) Defendant was required by the TREAD Act to conduct TPMS service kit labor when Plaintiff asked Defendant to install her tires; (3) the FMVRA does not apply to omissions; and (4) Plaintiff's Amended Complaint does not allege with particularity a claim for "fraud

or misrepresentation" under FMVRA § 559.920(20). [*See generally* ECF No. 25]. All these arguments fail.

The FMVRA was enacted "to protect consumers against misunderstandings arising from oral estimates of motor vehicle repairs and the legal disputes and litigation that result from the 'fait accompli' nature of claims for repair work already done." *Citron v. H.G.C. Auto Collision, Inc.*, 342 So. 3d 795, 798 (Fla. 3d DCA 2022) (internal citations omitted). In furtherance of this purpose, § 559.920 of the FMVRA provides, in pertinent part, that it is a violation for motor vehicle repair shops to: (1) "[m]isrepresent that certain parts and repairs are necessary to repair a vehicle";[1] (2) "[m]ake or authorize in any manner or by any means any written or oral statement that is untrue, deceptive, or misleading and that is known, or that by the exercise of reasonable care should be known, to be untrue, deceptive, or misleading"; and (3) "[p]erform any other act that is a violation of this part or that constitutes fraud or misrepresentation." §§ 559.920(4), (8), and (20), Fla. Stat.

Defendant's alleged conduct, taken as true, fits comfortably within subsections (4), (8) and (20) of Section 559.920. Defendant's failure to appropriately designate TPMS valve service kit labor as optional on Plaintiff's invoice could reasonably be construed as a misrepresentation that the service was necessary to repair her vehicle in violation of subsection (4). Furthermore, Defendant's "negative option" practice could be construed as making a written statement that Defendant knew or should have known to be deceptive or misleading under subsection (8). Finally, Defendant's conduct could state a claim for fraud or misrepresentation pursuant to Rule 9(b) of the Federal Rules of Civil Procedure and, thus, could state a claim under subsection (20).

---

[1] The FMVRA defines "motor vehicle repairs" to include "all maintenance of and modifications and repairs to motor vehicles, and diagnostic work incident thereto, including, but not limited to, the rebuilding or restoring of rebuilt vehicles, body work, painting, warranty work, calibration or recalibration of advanced driver assistance systems, and other work customarily undertaken by motor vehicle repair shops." § 559.903(7), Fla. Stat.

Defendant's argument that the FMVRA's definition of "motor vehicle repair" does not include the installation of new tires relies on facts outside the four corners of the Amended Complaint to make its point. This Court must confine its review only to those four corners and properly incorporated documents. *See Thaeter*, 449 F.3d at 1352. Regardless, the FMVRA definition of "motor vehicle repair" includes vehicle maintenance, modifications, calibration of advanced driver assistance systems, and "other work customarily undertaken by motor vehicle repair shops." § 559.903(7), Fla. Stat. As pled, the installation of tires on a vehicle clearly constitutes a vehicle modification, or "other work customarily undertaken by motor vehicle repair shops." Additionally, as alleged by both parties, TPMS valve service kit labor qualifies as calibration or recalibration of an advanced driver assistance system. [*See* ECF No. 15 ¶ 20] ("'TPMS Valve Service Kit Labor' purportedly refers to the labor and/or parts associated with the replacement and/or service of a vehicle's Tire Pressure Monitoring System."); [*see also* ECF No. 25 at 16] ("[Defendant] was required to perform the installation of the tires, including the TPMS valve kit so as to make the TPMS system in Plaintiff's vehicle operable[.]"). Accordingly, the FMVRA appropriately applies to TPMS valve service kit labor.

Moreover, an omission of a material fact in a written statement can be reasonably construed to make that statement "untrue, deceptive, or misleading" under the FMVRA. Defendant argues that § 559.920(8) only applies to "written or oral statement[s]" and not to alleged omissions of material fact. [*See* ECF No. 25 at 19]. Defendant provides no case law (or any other legal authority) to support the proposition that an omission of material fact in a written statement does not render that statement "untrue, deceptive, or misleading" under the FMVRA. In fact, courts have found that a defendant's failure to disclose inflated prices to consumers sufficiently stated a cause of action under subsection (8). *See State Farm Mut. Auto. Ins. Co. v. At Home Auto Glass L.L.C.*, No 8:21-CV-239-TPB-AEP, 2021 WL 6118102 at *1, 5 (M.D. Fla. Dec. 27, 2021). At a minimum, Defendant's alleged practice of

automatically adding optional charges to a consumer's invoice without disclosing that such charges are optional is sufficiently similar to failing to disclose an inflated price.  Furthermore, common sense suggests that a written statement can easily be made "untrue, deceptive, or misleading" when a material fact is omitted.  Accordingly, Defendant's alleged omissions on a Plaintiff's transaction paperwork states a claim under subsection (8).

Finally, Plaintiff also has stated a claim for "fraud or misrepresentation" sufficiently under Section 559.920(20) of the FMVRA.  Defendant argues that Plaintiff fails to state with particularity: (1) which act was fraudulent and (2) how the act was fraudulent.  [ECF No. 25 at 20].  As a consumer protection statute (which are often construed as protecting against conduct that need not amount to common law fraud), it is not clear whether plaintiffs alleging violations of Section 559.920(20) are required to meet the heightened standards of Rule 9(b) of the Federal Rules of Civil Procedure.[2]  While the parties provide no legal authority that speaks directly to the question as applied to Section 559.920(20), even if Plaintiff were required to comply with Rule 9(b)'s heightened pleading standards under Section 559.920(20), the Amended Complaint still survives a motion to dismiss because it includes the "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Opper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009).  Plaintiff alleges that on March 28, 2022, at Defendant's Firestone Complete Autocare Facility, Defendant automatically included two optional charges on Plaintiff's invoice without indicating to Plaintiff that those charges were optional. [*see generally* ECF No. 15 ¶¶ 11–25].  Plaintiff also alleges that Defendant's conduct was "willful," and

---

[2]  Typically, the heightened pleading requirements of FRCP Rule 9(b) apply to all claims that are "sounding in fraud."  *See Steel Media Group, LLC v. Lewis*, No. 1:22-CV-21780, 2023 WL 1413043, at *3 (S.D. Fla. Jan. 6, 2023).  Section 559.920(20) of the FMVRA by its very terms creates a cause of action for "any other act that is a violation of this part or that constitutes fraud or misrepresentation."

10

generated Defendants a substantial profit. [*Id.* ¶¶ 22–25, 44]. A plain, common sense reading of the Amended Complaint suggests that Defendant's conduct was fraudulent because it purposely enticed consumers to purchase products or services on the mistaken belief that such products were required, or part in parcel to their desired purchase. For all these reasons, Plaintiff's allegations under Section 559.920(20) survive a motion to dismiss.

Therefore, Defendant's Motion to Dismiss as to Count II is DENIED.

## IV.  CONCLUSION

For the reasons explained above, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [**ECF No. 25**] is **DENIED** as to Counts I and II. Defendant shall file its Answer to the Amended Complaint **no later than September 20, 2024**.

**DONE AND ORDERED** in the Southern District of Florida on August 28, 2024.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:     counsel of record